**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **RANDOLPH MIMS** | : | |
| **v.** | : | **CIVIL ACTION NO.** |
| | : | **25-7042** |
| **MONTGOMERY COUNTY and JAMES REAPE,** | : : | |

**MEMORANDUM**

**PEREZ, J.** **September 28, 2026**

Plaintiff Randolph Mims, proceeding pro se, brings federal and state claims arising from his December 2023 arrest and prosecution. Defendants Montgomery County and Detective James Reape move for partial dismissal of the Amended Complaint. ECF No. 19. For the reasons stated below, the motion will be granted substantially in full.

## I. Background

What began as a dispute over surplus proceeds from a sheriff's sale eventually resulted in Mims's arrest and prosecution. According to the Amended Complaint, Mims, a real estate investor and landlord, purchased property in Pottstown, Pennsylvania, at a Montgomery County sheriff's sale. ECF No. 18 ¶¶ 14, 17. After the sale, Mims negotiated with the former owners, Washington Guarderas and Amanda Moore, over money Mims claimed they owed for their continued occupancy of the property, property damage, cleanup costs, and other expenses. *Id.* ¶¶ 18–19. Montgomery County Sheriff's Office personnel became involved in those negotiations. According to Mims, Sheriff's Solicitor Joseph Walsh provided language to use in assignments through which Guarderas and Moore could direct a portion of the surplus proceeds to Mims. *Id.* ¶¶ 20–22, 52. Mims alleges that Christine Adams, the Chief of the Sheriff's Real Estate Division, confirmed the required language and instructed him to return signed and notarized agreements to the Sheriff's

Office. *Id.* ¶¶ 20–22. Mims obtained the agreements, but alleges that Adams and the Sheriff's Office later refused to process them. *Id.* ¶¶ 22–24, 53.

On October 11, 2023, the Court of Common Pleas entered an order directing the Sheriff to honor a stipulated agreement between Mims and the former owners, conduct a final title search, satisfy liens and encumbrances, pay Mims $33,506.87, and distribute the remaining surplus to Guarderas and Moore. *Id.* ¶ 50. Eight days later, the Sheriff, through Walsh, moved for reconsideration and sought to return the matter to an exceptions hearing based in part on concerns about the validity of certain liens and the former owners' understanding of the agreement. *Id.* ¶ 51. Mims alleges that the parties later negotiated a separate agreement under which he would receive approximately $18,000. *Id.* ¶¶ 54–56.

Mims further alleges that, after he filed copies of the assignment documents in the state court proceeding, the matter was referred to the Montgomery County Detective Bureau for criminal investigation. *Id.* ¶¶ 24–25. Defendant Detective James Reape was assigned to investigate. During a November 28, 2023 telephone interview, Mims says he repeatedly told Reape that Guarderas had received only copies of the relevant documents and that Mims retained the originals. *Id.* ¶¶ 32–38. Mims alleges that his partner, Cynthia Plath, and his friend, George Pavalantis, heard the entire call because it was conducted on speakerphone. *Id.* ¶¶ 36–38.

Reape submitted an affidavit of probable cause on December 12, 2023. Mims alleges that the affidavit falsely stated that Mims admitted giving Guarderas the original documents before Guarderas took them back. *Id.* ¶¶ 39–45. According to Mims, that statement was significant because the prosecution's theory depended in part on allegations that Guarderas had revoked his agreement, recovered the original documents, and that Mims nevertheless later filed the documents. *Id.* ¶ 57. Mims also challenges other portions of Reape's affidavit, including statements

concerning whether the former owners knew of the sheriff's sale, the nature of the underlying debt and proceedings, and the reasons Mims sought payment from the surplus. *Id.* ¶¶ 46–58. He further alleges that the affidavit omitted or mischaracterized the October 11 state court order and other records that, in his view, showed the dispute was civil rather than criminal. *Id.*

An arrest warrant issued, and police arrested Mims at his home on December 14, 2023. *Id.* ¶¶ 59–60. Mims alleges that he was handcuffed and taken from his home in view of his neighbors, detained for more than twelve hours, and later released. *Id.* ¶¶ 59–75. The criminal case proceeded to a preliminary hearing on January 17, 2024. *Id.* ¶ 84. Mims alleges that Reape and other witnesses testified at the hearing and that the charges were held for court. *Id.* ¶¶ 84–91.

The prosecution continued for several more months. According to Mims, on May 9, 2024, the assigned Assistant District Attorney told him that she could not prove criminal intent and would withdraw the case. *Id.* ¶¶ 92–94. All charges were withdrawn that day. *Id.* ¶ 94.

Mims also attempts to contextualize his prosecution in a broader pattern of alleged County misconduct. His *Monell* theory relies in part on two earlier lawsuits involving Montgomery County law enforcement personnel: *Logan v. Salem Baptist Church of Jenkintown*, No. 10-144 (E.D. Pa.), and *Black v. Montgomery County*, No. 14-6702 (E.D. Pa.). ECF No. 18 ¶¶ 144–45. In *Logan*, a contractor alleged that a Montgomery County detective pursued theft charges arising from a construction dispute after pressure from a church. The case later settled without an admission or judicial finding of liability. In *Black*, the plaintiff alleged that a Montgomery County detective and other officers fabricated evidence during an arson investigation that resulted in criminal charges; that case likewise settled without an admission or judicial finding of County liability. Defendants emphasize that the prosecutions underlying both cases occurred more than a decade before Mims's prosecution. ECF No. 19 at 7–8. Mims cites the cases as examples that, in his view, placed the

County on notice of a risk that detectives could fabricate evidence or misuse criminal process. ECF No. 18 ¶¶ 144–46.

Mims filed this civil action on December 12, 2025 and later filed the operative Amended Complaint. He asserts ten federal and state causes of action arising from the investigation, arrest, and prosecution.

The present motion is narrower than the factual allegations underlying the case. Defendants do not presently ask the Court to determine whether Reape fabricated evidence, whether the warrant was supported by probable cause, or whether the prosecution was constitutionally permissible. They seek dismissal only of Counts I through IV as asserted against Montgomery County, Count VI as asserted against Montgomery County, Count IX for defamation, and Count X for negligent infliction of emotional distress. Defendants also move to strike allegations concerning a possible class action and class-related discovery. ECF No. 19. The individual-capacity claims against Reape in Counts I through III, as well as Counts V, VI as to Reape, VII, and VIII, are not challenged by the present Motion.

## II. Standard of Review

To survive a Rule 12(b)(6) motion, a complaint must contain sufficient factual matter to state a claim that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Court accepts well-pleaded facts as true, disregards legal conclusions, and determines whether the facts plausibly show entitlement to relief. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210–11 (3d Cir. 2009). A pro se complaint is construed liberally. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

## III. Discussion

### A. Section 1983 Claims Against Montgomery County

A municipality is not liable under § 1983 solely because it employs a constitutional tortfeasor. *Monell v. Department of Social Services*, 436 U.S. 658, 691, 694 (1978). Municipal liability instead requires a policy or custom that caused the constitutional injury. *Id.* A custom must be sufficiently well settled and permanent to have the force of law. *Estate of Roman v. City of Newark*, 914 F.3d 789, 798 (3d Cir. 2019). A failure-to-train claim requires deliberate indifference, and a pattern of similar constitutional violations is ordinarily necessary to establish that deliberate indifference. *Connick v. Thompson*, 563 U.S. 51, 61–62 (2011).

Mims advances several theories of municipal liability. He alleges inadequate training and supervision concerning probable cause affidavits, fabrication of evidence, exculpatory information, and the use of criminal process in civil disputes. ECF No. 18 ¶ 142. He also relies on two prior lawsuits involving Montgomery County, *Logan* and *Black*, the District Attorney's Office's reported conviction rates, and the conduct of County officials in his own case. *Id.* ¶¶ 143–49.

Those allegations do not plausibly establish a County policy or custom. Mims identifies no formal policy authorizing the conduct alleged here. His custom theory relies principally on *Logan*, which involved allegations that a detective improperly turned a construction dispute into a criminal theft prosecution, and *Black*, which involved allegations that law enforcement officers fabricated evidence during an arson investigation. Mims cites those cases to show that the County previously faced allegations of wrongful prosecution and fabricated evidence and therefore was on notice of similar misconduct. Neither case, however, resulted in a finding that Montgomery County

maintained an unconstitutional policy or custom, and the prosecutions underlying both occurred more than a decade before the events alleged here.

Two older lawsuits arising from different factual circumstances do not, without more, establish a permanent and well-settled County practice in 2023. The Amended Complaint identifies no intervening pattern of similar complaints, disciplinary findings, or comparable incidents involving Reape or other County detectives from which County knowledge or acquiescence could reasonably be inferred. *See Estate of Roman*, 914 F.3d at 798–99; *Wooden v. City of Philadelphia*, No. 19-1054, 2022 WL 17724415, at *6 (E.D. Pa. Dec. 16, 2022).

This Court's conclusion is consistent with cases dismissing similarly unsupported Monell claims. In *McTernan v. City of York*, anti-abortion protesters alleged that York police officers repeatedly prevented them from entering a public alley near a Planned Parenthood clinic. 564 F.3d 636, 646, 658–59 (3d Cir. 2009). Although the plaintiff alleged that officers imposed the restriction on multiple occasions, the complaint did not identify the municipal policy that required it or allege that the Mayor, Police Chief, or another municipal decisionmaker knew of or directed the officers' conduct. *Id.* at 658–59. The Third Circuit therefore affirmed dismissal of the Monell claim. *Id.* Mims's allegations suffer a similar problem: he describes misconduct in his own case and points to two much older lawsuits, but does not plead facts showing that the alleged conduct resulted from an existing County-wide practice known to County policymakers.

In *Arcuri v. County of Montgomery* the estate of a woman who died shortly after entering the Montgomery County Correctional Facility alleged that the County failed to train and supervise officers and medical personnel in monitoring inmates undergoing opioid withdrawal, failed to enforce observation requirements, and improperly relied on inmate "babysitters" to monitor detainees. No. 20-5408, 2021 WL 1811576, at *7–9 (E.D. Pa. May 6, 2021). The court nevertheless

dismissed the *Monell* claim because those allegations largely described what happened to the decedent and did not identify comparable incidents, an actual County policy, or facts showing that the County had created or maintained the alleged practices. *Id.* at *8–9. Mims's allegations have the same basic deficiency. He describes misconduct in his own prosecution and cites two much older lawsuits, but does not identify a contemporaneous series of similar incidents, complaints, disciplinary findings, or other facts showing that Montgomery County knew of and tolerated an ongoing practice of evidence fabrication or wrongful prosecution.

The failure-to-train and failure-to-supervise theories are similarly deficient. The Amended Complaint identifies subjects on which Mims believes the County should have provided additional training or supervision, but it alleges no facts concerning the County's actual practices, a pattern of comparable failures, or prior notice that existing practices were likely to cause the constitutional violations alleged here. *See Connick*, 563 U.S. at 61–62.

Mims's reliance on the District Attorney's Office's conviction rate does not save his *Monell* claim. A high conviction rate, without facts connecting it to fabrication of evidence, suppression of exculpatory information, or prosecutions unsupported by probable cause, does not permit a reasonable inference of an unconstitutional municipal practice. *See Leibovitz v. City of New York*, No. 14-3297, 2016 WL 3671232, at *6 (S.D.N.Y. Mar. 17, 2016) (rejecting a Monell theory based on a district attorney's use of conviction-rate data where the plaintiff failed to allege facts showing how the practice caused or encouraged unconstitutional conduct).

Mims also alleges that Sheriff's Solicitor Joseph Walsh or his designees caused the criminal referral and characterizes Walsh and other County officials as policymakers. The Amended Complaint does not allege facts showing that Walsh possessed final policymaking authority over criminal investigations or charging decisions. *See Santiago v. Warminster Township*, 629 F.3d 121,

135 & n.11 (3d Cir. 2010) (affirming dismissal of a *Monell* claim where the complaint did not allege that the police chief had final policymaking authority or identify conduct that could fairly be characterized as municipal policy, and explaining that final policymaking authority is determined by state law).

Counts I through III therefore fail as to Montgomery County, and Count IV fails to state a *Monell* claim. The Court will dismiss those claims without prejudice. Leave to amend is appropriate because a civil rights plaintiff generally should receive an opportunity to cure a pleading deficiency unless amendment would be inequitable or futile. *Grayson v. Mayview State Hospital*, 293 F.3d 103, 108 (3d Cir. 2002).

### B. Count VI: Malicious Prosecution Against Montgomery County

Pennsylvania's Political Subdivision Tort Claims Act provides that a local agency is immune from damages unless a statutory exception applies. 42 Pa. Cons. Stat. § 8541. The exceptions in § 8542 apply to negligent acts within specified categories and exclude conduct constituting actual malice or willful misconduct. *Id.* § 8542(a)(2), (b). Count VI alleges malicious prosecution, an intentional tort. ECF No. 18 ¶¶ 161–68. None of § 8542(b)'s exceptions applies. Section 8550 does not remove the County's immunity; it withdraws specified protections available to individual employees when their conduct is judicially determined to constitute a crime, actual fraud, actual malice, or willful misconduct. 42 Pa. Cons. Stat. § 8550. Count VI will therefore be dismissed with prejudice as to Montgomery County.

### C. Count IX: Defamation

Pennsylvania requires an action for libel or slander to be commenced within one year. 42 Pa. Cons. Stat. § 5523(1). The allegedly false affidavit was sworn on December 12, 2023, and the

criminal complaint followed shortly thereafter. Mims commenced this action on December 12, 2025. Any defamation claim based on those publications is therefore untimely.

The identified judicial statements are also absolutely privileged. Pennsylvania extends the judicial proceedings privilege to statements made in or pertinent to judicial proceedings and to communications made to law enforcement officials for the purpose of initiating criminal proceedings. *Pawlowski v. Smorto*, 588 A.2d 36, 41–42 (Pa. Super. Ct. 1991). The privilege applies regardless of alleged falsity or malice. *Id.*

Mims also alleges on information and belief that the statements were communicated to media outlets and other persons. ECF No. 18 ¶ 189. That allegation does not identify a particular nonprivileged statement made by Reape, its recipient, or its date. It therefore does not plausibly plead a timely defamation claim.

Count IX will be dismissed with prejudice insofar as it rests on the affidavit, criminal complaint, testimony, or other privileged judicial communications. Mims may amend Count IX only if he can allege, consistent with Rule 11, a specific non-privileged defamatory statement personally published by Reape that was timely when this action commenced.

**D. Count X: Negligent Infliction of Emotional Distress**

Count X expressly seeks bystander recovery for emotional injuries suffered by Cynthia Plath, Mims's mother, his daughter, and other family members. ECF No. 18 ¶¶ 192–99. However, a litigant generally must assert his own legal rights, not those of third parties. *Warth v. Seldin*, 422 U.S. 490, 499 (1975). A nonlawyer proceeding pro se also may not represent another person in federal court. *Osei-Afriyie v. Medical College of Pennsylvania*, 937 F.2d 876, 882–83 (3d Cir.

1991). Mims therefore cannot recover for the emotional injuries allegedly suffered by those nonparties or litigate claims on their behalf. Count X will be dismissed with prejudice as to Mims.

### E. Class Allegations

Mims alleges that discovery may support a future class action and seeks discovery concerning other persons allegedly harmed by Reape. ECF No. 18 ¶¶ 103–07. A pro se litigant may not represent a class. *Ezekoye v. Ocwen Federal Bank FSB*, 179 F. App'x 111, 113 (3d Cir. 2006); see also Fed. R. Civ. P. 23(a)(4).

Rule 12(f) permits a court to strike immaterial or impertinent matter from a pleading. Fed. R. Civ. P. 12(f). The Court will strike paragraphs 103 through 107 and subparts (e) through (h) of the Prayer for Relief to the extent they seek class treatment or discovery solely to develop class litigation. This ruling does not determine the permissible scope of ordinary discovery relevant and proportional to a surviving or adequately amended individual or *Monell* claim.

## IV. Conclusion

Defendants' Motion for Partial Dismissal will be granted in full. Counts I through IV will be dismissed without prejudice as to Montgomery County. Count VI will be dismissed with prejudice as to Montgomery County. Count IX will be dismissed as set forth above. Count X will be dismissed with prejudice as to Mims. Finally, the identified class-related allegations will be stricken.